## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EDWARD V. RAY, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-92-HE |
| ) | |
| ) | |
| MRS. BRADFORD, et al, ) | |
| ) | |
| Defendants. ) | |

### REPORT AND RECOMMENDATION

Plaintiff, a California state prisoner appearing pro se and *in forma pauperis*, has filed this action under 28 U.S.C. § 1983 alleging various violations of his constitutional rights. At all times material to this action, Plaintiff was incarcerated at the North Fork Correctional Facility in Sayre, Oklahoma. United States District Judge Joe Heaton has referred the matter to the undersigned Magistrate Judge for the preparation and submission of proposed findings and recommendations as to dispositive matters in accordance with 28 U.S.C. § 636(b)(1)(B). Now before the Court is the **Defendants' Motion to Dismiss. EFC No. 15.** For the reasons set forth below, it is hereby recommended that the motion be **GRANTED.**

### I. BACKGROUND

Plaintiff names four Defendants, identified as employees at the North Fork Correctional Facility (NFCF): Mrs. Bradford, unit manager; Ms. Hagerman, chief of security; R. Ferguson, correctional counselor; and c/o Hansen, correctional officer. Complaint, 1-2.

In his description of the nature of the case, Plaintiff alleges that the above named Defendants "conspired" to separate him from his son, who is apparently a co-defendant in a criminal case pending in California and was at the time of the matters complained of Plaintiff's cell mate. Complaint, 2. He alleges that "they" fabricated a disciplinary offense when Plaintiff allegedly failed to comply with an order to move to a cell separate from that of his son. Complaint, 2-3. He alleges that he has been at NFCF twice, but that the allegations in this case stem from his second incarceration at NFCF. Complaint, 3.

During his second incarceration at NFCF, Plaintiff alleges that Defendants Bradford and Ferguson began to "harass us." Complaint, 3. This apparently culminated in Defendant Ferguson telling Plaintiff that he was to be moved to another housing unit; Plaintiff responded that he said "ok, but because of our case we need to move together in a new bldg," and that "we are approved to be celled up, due to our case which the State of CA. approved." Complaint, 3. He alleges that "they" then told him that "this is Oklahoma, not California, we decide what goes on here," and "your [sic] being separated." *Id.* Plaintiff alleges that "they" then fabricated a "refusing to house" write up. Complaint, 3. Plaintiff alleges that this resulted in placement in "the hole," loss of recreation and good time credits, and an increase in security level. Complaint, 2.

Plaintiff's statement as to the nature of the case contains various other allegations such as a cell search, staff telling other inmates that Plaintiff had "snitched"

on his son, and failure to forward and/or destruction of a piece of mail, all of which will be discussed in the context of the four claims for relief contained in the Complaint.

In his four-count Complaint, Plaintiff alleges first that his First Amendment rights were violated when "Doe #1" seized his incoming mail and destroyed it before he could be notified it had been confiscated. Complaint, 4. Plaintiff was apparently moved from NFCF sometime before November 6, 2012, when the piece of mail was seized, and received notice at his new prison on January 18, 2013. Complaint, 4. He alleges "I wasn't given my right to Due Process before they destroyed my mail." *Id*. He claims that the staff member's name is not legible. *Id*.[1]

In Count II, Plaintiff alleges violation of his Fifth Amendment rights as a result of being "given a write up for 'refusing to house,' which I was found guilty of"; being placed in "the hole"; loss of recreation for 30 days; loss of 30 days of good time credit "which I just now got restored"; a four-point increase in custody level; being moved away from his son/co-litigant to a new prison; and "proof when the Court requests it by way of the documents." Complaint, 4.

In Count III, Plaintiff alleges a violation of his Eighth Amendment right to be free from cruel and unusual punishment as a result of the "refuse to house" write up, claiming it was a showing of evil motive and intent and/or a reckless and callous indifference to the federally protected rights of Plaintiff and his son. Complaint, 5.

Finally, in Count IV, Plaintiff alleges a violation of his Fourteenth Amendment

---

[1] In Count IV of the Complaint Plaintiff again refers to this incident, claiming that "I wasn't notified NFCF was holding and eventually destroyed a piece of mail from my son/co-litigant." Complaint, 6.

right to due process as a result of the following: increase in his security level without a hearing upon his arrival at NFCF; failure to be notified that NFCF was holding and eventually destroyed a piece of mail from his son/co-litigant; violation of the "California Code of Regulations" by "these staff members"; and being drug tested and strip searched after a non-defendant identified by Plaintiff as "Lt. Williams" "evesdropped" on a conversation with another inmate while walking across the yard. Complaint, 6. Plaintiff alleges that he was told by this "Lt. Williams" that "you must be high to say that." *Id.* He claims he wasn't given a reason for either the test or the strip search and that it was done out of spite. *Id.*

As relief, Plaintiff seeks nominal damages, declaratory relief, and punitive damages in the amount of "$1 million dollars." Complaint, 7.

## II. STANDARD GOVERNING MOTIONS TO DISMISS

"To survive a motion to dismiss [under Rule 12(b)(6) ], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *see Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. The Tenth Circuit Court of Appeals has recognized that "the degree of specificity necessary to establish plausibility and fair

4

notice [under Rule 8(a)(2)], and therefore the need to include sufficient factual allegations, depends on context."

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.
>
> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008) (citations and internal quotations omitted). In § 1983 cases, it is particularly important to make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations. *Id.* at 1249–50; *see also Smith v. United States,* 561 F.3d 1090, 1104 (10th Cir. 2009).

### III. DISCUSSION

#### A. Count I

Defendants seek dismissal of Count I because Plaintiff makes no allegation that any of the four Defendants were involved in the confiscation and destruction of any incoming mail. Motion to Dismiss, 2. In addition to Plaintiff's failure to allege any

personal participation on the part of any of the named Defendants, they argue that he fails to allege any details regarding the piece of mail destroyed or how he was actually injured as a result of its destruction.

Plaintiff's response to Defendants' criticism of Count I is unpersuasive to say the least. First, he claims that because the "signature is NOT legible, hence the 'et al.' added to the names section of the complaint." Plaintiff's Response, 3. However, simply adding "et al." to the caption of a complaint is not sufficient to state a claim against any defendant, much less the ones who are named. Rule 10(a) of the Federal Rules of Civil Procedure mandates that all parties be identified in the caption of the complaint and correspond to the parties identified in the text. Therefore, a plaintiff must identify all defendants in the caption of the amended complaint, and then explain how each named defendant allegedly violated his constitutional rights. Requirement That Pleadings Be Captioned, 5A Fed. Prac. & Proc. Civ. § 1321 (3d ed.) ("Use of the term 'et al.' is insufficient for compliance with Rule 10(a)") (quoting *Carter v. Glanz*, Case No. 10-CV-754-GKF-PJC 2010 WL 5175078, *3 (N.D. Okla. 2010)). In fact, Plaintiff concedes that he has not alleged that Defendants Bradford, Hagerman, Hansen, or Ferguson "directly participated in the deprivation of the mail." Plaintiff's Response, 5.

Furthermore, Plaintiff argues that he cannot know if he was harmed by the destruction of the letter because he never received it. Plaintiff's Response, 5. First, if harm had occurred from the destruction of this piece of mail sometime between November of 2012 and January 2013, it is implausible that Plaintiff would not know of it

by now. This is particularly true in light of Plaintiff's allegation that this single piece of mail was from his own son—who he describes as a co-defendant in a criminal case they are currently defending. *See* Complaint, 6.

Accordingly, the undersigned finds that Plaintiff has failed to state a claim upon which relief can be granted as against the moving Defendants and it is recommended that Count I be dismissed.

**B. Count II**

Defendants move for dismissal of Count II on two alternative grounds. First, they contend that any claim for violation of Plaintiff's constitutional rights as a result of the misconduct offense for "refusal to house" is premature under *Heck v. Humphrey,* 512 U.S. 477 (1994) and *Edwards v. Balisok,* 520 U.S. 641 (1997). In his response, Plaintiff essentially challenges his disciplinary conviction claiming it was "fabricated," and that he never refused housing (although clearly alleges that his acceptance of the new housing assignment was contingent on his son continuing to be his cell mate). Plaintiff's Response, 6; Complaint, 3.

The undersigned agrees with the Defendants that any of Plaintiff's claims based on the disciplinary offense appear to be premature. However, Plaintiff's allegations regarding the disposition of that offense are ambiguous based on one reference in the Complaint to the fact that his good time credits "just now got restored." Complaint, 4. Accordingly, it is recommended that Plaintiff's claims against the movants in Count II be dismissed without prejudice unless he shows within 14 days of the adoption of this

7

Report and Recommendation that the disciplinary conviction has been invalidated. *See Brown v. Cline,* 319 Fed. Appx. 704, 705-06 (10th Cir. March 26, 2009) ("Plaintiff's claims that the disciplinary reports against him were false and retaliatory ... are claims that necessarily implicate the validity of the disciplinary charge[ ] and the sanctions imposed, including the loss of good-time credits. *Heck* and *Edwards* make clear that Plaintiff does not have a cognizable § 1983 claim under these circumstances unless he can show that the disciplinary conviction[ ][has] been invalidated.").

Defendants' alternative theory for dismissal is that Plaintiff has failed to show that he has suffered an atypical prison hardship. Indeed, in *Muhammad v. Close,* 540 U.S. 749 (2004) (*per curiam*), the United States Supreme Court recognized an exception to *Heck's* bar. In *Muhammad,* the prisoner brought a § 1983 action seeking damages for being placed in a segregation unit prior to a disciplinary hearing in which he was acquitted of the misconduct offense and thus did not forfeit earned credits. *Id.* at 752. In that case, where the inmate did not challenge the underlying disciplinary conviction, the Court found that the inmate had raised no claim on which habeas relief could have been granted and therefore "*Heck's* favorable termination requirement was inapplicable." *Id.* at 755.

In a recent unpublished order, the Tenth Circuit Court of Appeals interpreted the *Muhammad* decision and recognized that "*Muhammad* left open the possibility that *Heck* might not apply when a habeas remedy is unavailable." *Harrison v. Morton,* 490 Fed.Appx. 988, 992 (10th Cir. 2012) (unpublished order) (quoting *Muhammad,* 540 U.S.

8

at 752 n. 2). In that case, Harrison was ineligible to earn good time credits under Oklahoma law and the appellate court reasoned that the prisoner "likely would not be able to file a habeas petition challenging his disciplinary conviction" because the § 2241 habeas remedy is available only to challenge prison disciplinary proceedings when those proceedings affect the fact or duration of the prisoner's custody, "such as when a prisoner is deprived of earned credits." *Id.* Because it is unclear whether Plaintiff has been deprived of any time credits, the undersigned must consider Defendants' alternative grounds for dismissal in the event *Heck* and *Balisok* are inapplicable. For the following reasons, it is found that Plaintiff's claims do not rise to the level cognizable under § 1983.

"In the penological context, not every deprivation of liberty at the hands of prison officials has constitutional dimension. This is so because incarcerated persons retain only a 'narrow range of protected liberty interests.'" *Rezaq v. Nalley,* 677 F.3d 1001, 1011 (10th Cir. 2012) (quoting *Abbott v. McCotter,* 13 F.3d 1439, 1442 (10th Cir. 1994)). For example, a liberty interest may arise when an inmate faces conditions of confinement that impose an "'atypical and significant hardship ... in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Wilkinson v. Austin,* 545 U.S. 209, 223 (2005)). When conditions do not rise to that level, the court will not review the procedural steps taken by prison officials in determining the appropriate placement of inmates. *See id.* at 1016 ("Because no liberty interest is implicated, we do not reach the question of whether the inmates received adequate process to justify their transfers to

ADX."). While a liberty interest "may arise from an expectation or interest created by state laws or policies," we may not parse the language of prison regulations as part of this inquiry; rather, we look to the nature of the conditions themselves in relation to the ordinary incidents of prison life. *Wilkinson,* 545 U.S. at 222–23; *Stallings v. Werholtz*, 492 F. Appx 841, 843-44 (10th Cir. 2012).

The undersigned finds that Plaintiff's allegations that he was in segregated housing and deprived of recreation for thirty days, had his security level increased, and was transferred away from his son do not impose the sort of atypical conditions that give rise to due process protections. Accordingly, it is recommended that if Count II survives Defendants' challenge under *Heck* and *Balisok*, that it be dismissed on this ground.

### C. Count III

Defendants also move for dismissal for Plaintiff's claim in Count III that his write up for "refusal to house" and other alleged punishments violated his rights under the Eighth Amendment.

The undersigned agrees that Plaintiff's conclusory allegations regarding segregation, cell searches, strip searches, and the write up for his refusal to accept a housing assignment separate from his son "are not sufficiently serious to establish an Eighth Amendment claim, as they are not extreme risks resulting in the denial of the minimal civilized measure of life's necessities." *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (for conditions of confinement to violate the Eighth Amendment, they must

be "sufficiently serious"; they "must result in the denial of the minimal civilized measure of life's necessities") (quotations omitted). Accordingly, it is recommended that the claims against movants in Count III be dismissed.

**D. Count IV**

Finally, Defendants move for dismissal of Count IV, in which Plaintiff alleges that his custody level was increased, a piece of mail destroyed, and that he was drug tested and strip searched by another person not even named in the Complaint. The undersigned agrees that Plaintiff's allegations are conclusory—and in the instance of the drug test and strip search—do not even implicate the Defendants he has named. As discussed above in the context of Count II, he has certainly failed to allege conditions that are atypical in the prison context.

In his response, Plaintiff alludes to California rules and procedures that would have prohibited the actions about which he complains in the absence of due process. However, "[a]fter *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005). The nature of the conditions Plaintiff refers to in Count IV are insufficient to survive dismissal. Accordingly, it is recommended that Plaintiff's claims in Count IV against the movants be dismissed.

**RECOMMENDATION**

In light of the foregoing, it is recommended that the **Defendants' Motion to Dismiss, ECF No. 15, be GRANTED.** As noted above, if this Report and Recommendation is adopted, it is further recommended that Plaintiff be given **fourteen days** from the date of any order adopting it to show that the disciplinary conviction for "failure to house" has been overturned. If such a showing is made, Plaintiff should be given leave to amend his Complaint with regard to his claim that the disciplinary offense was retaliatory in nature. Otherwise, that claim shall be dismissed without prejudice. It is recommended that Plaintiff's remaining claims be dismissed with prejudice as to all Defendants. Plaintiff is hereby advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by **December 16, 2013**, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** on November 27, 2013.

*[Signature]*
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE