# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EDWARD V. RAY, JR., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Case No. CIV-13-92-HE |
| MRS. BRADFORD, MS. HAGERMAN, R. FERGUSON, and C/O HABSEN, | ) ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, a California state prisoner appearing pro se and *in forma pauperis*, has filed this action under 28 U.S.C. § 1983 alleging various violations of his constitutional rights. United States District Judge Joe Heaton referred the matter to the undersigned magistrate judge for the preparation and submission of proposed findings and recommendations as to dispositive matters in accordance with 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, it is hereby recommended that Defendants' Motion to Dismiss, (ECF No. 29), the Amended Complaint (ECF No. 28) be construed as a motion for summary judgment, and that the motion, so construed, be **GRANTED**.

### I. PROCEDURAL BACKGROUND

In response to Plaintiff's original complaint, defendants filed a motion to dismiss (EFC No. 15). In a Report and Recommendation dated November 27, 2013, the undersigned magistrate judge recommended that defendants' motion to dismiss be

granted. (ECF No. 17). On March 7, 2014, the District Court adopted the aforementioned report and recommendation in part, allowed Plaintiff the opportunity to amend his complaint, and recommitted the case for further proceedings. Plaintiff filed an amended complaint. (ECF No. 28). Defendants filed a second motion to dismiss (ECF No. 29), to which Plaintiff has responded (ECF No. 32).

## II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

By order if this court, prison officials prepared and filed a special report addressing Plaintiff's claims (ECF No. 14). See *Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978). Prison officials attached appropriate exhibits. (ECF No. 14). The court's order directing prison officials to prepare and file the special report also informed Plaintiff that:

> "[W]hen a dispositive motion is supported by affidavits and/or other documents, the party opposing the motion may not depend upon the mere allegations in his pleadings to counter it. The party opposing the motion must respond with counter affidavits and/or documents to set forth specific facts showing that there is a genuine issue of material fact to be litigated at the trial."

(ECF No. 7). Plaintiff attached exhibits to his Objections to the Report and recommendation, (ECF No. 20), and to his response to Defendants' second motion to dismiss. (ECF No. 32). In reaching a recommended result in this case, the undersigned magistrate judge has considered these outside materials.

"A 12(b)(6) motion must be converted to a motion for summary judgment if 'matters outside the pleading are presented to and not excluded by the court.'" *GFF*

2

*Corporation v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997). Typically, if the court decides to convert a Rule 12 (b) motion to a Rule 56 motion for summary judgment, it must provide parties with notice of the conversion to avoid unfair surprise. *See Nichols v. United States*, 796 F.2d 361, 364 (10th Cir. 1986). But here, both parties have attached documents outside the pleadings, essentially inviting the Court to treat the motion to dismiss as a motion for summary judgment. Under these circumstances, no formal notice of conversion is required. *Id.*

In the context of summary judgment, judgment for the movant shall be granted where the movant "shows that there is no genuine dispute as to any material fact in considering a motion for summary judgment, the court must view the facts and inferences drawn from the record in the light most favorable to the nonmoving party. *Burke v. Utah Trans. Authority & Local 382*, 462 F. 3d 1253, 1258 (10th Cir. 2006) (quotation omitted). A dispute is "genuine," when viewed in this light, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." *Id.* To obtain summary judgment, the moving party need not affirmatively negate the nonmovant's claims. *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the initial burden of indicating the portions of the record that "demonstrate the absence of a genuine issue of material fact." *Id.* "If the movant meets the initial burden, the burden then shifts to the nonmovant to 'set forth specific facts

3

from which a rational trier of fact could find for the nonmovant.'" *Liberation Party of New Mexico v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (quoting Rule 56(e) (2007 version)).

Additionally, when a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

**III. ANALYSIS**

**A. The District Court's Order**

In its Order dated March 7, 2014, the District Court adopted the recommendations of the undersigned magistrate judge with respect to Plaintiff's Count I allegations, regarding destruction of mail, and dismissed this claim with prejudice. (ECF No. 21:3).

The District Court also dismissed the claims in Count II, but for Plaintiff's contention that his security level was increased. The District Court was concerned that the increase might implicate due process rights if it negatively affected Plaintiff's ability to earn good time credits. The District Court also questioned whether Plaintiff's transfer to another facility might implicate his due process rights. The District Court noted that some issues presented might be governed by California law (which Plaintiff insists grants greater protection to its prisoners convicted of disciplinary misconduct than the due process clause of the Fourteenth Amendment). These claims are in the nature of

4

habeas claims which Plaintiff could have challenged through 28 U.S.C. § 2241 and are barred by *Heck* and *Edwards* unless Plaintiff's disciplinary conviction has been overturned.¹

The District Court also dismissed the claims in Count III and Count IV except for the segregation claim in Count III and the challenge to the change in custody level in Count IV.² (ECF No. 21:6).

The District Court allowed Plaintiff to amend his complaint to (1) clarify whether his disciplinary conviction has been invalidated; (2) clarify whether his custody level was changed as part of the punishment arising from his disciplinary conviction and, if so, what effect the change had on his ability to earn good time credits; (3) allege facts regarding the length of time he was in segregation and the conditions of that confinement; and (4) identify those prison employees or officials responsible for the change in his custody level when he arrived at North Fork. (ECF No. 21:9). The District Court stated that California law may affect some of Plaintiff's claims.

### B. Plaintiff's Amended Complaint

In his Amended Complaint, Plaintiff names four defendants, identified as employees at the North Fork Correctional Facility (NFCF): Mrs. Bradford, unit manager;

---

¹ "*Heck* held that a prisoner's claim for damages is not cognizable under section 1983 if a judgment in the plaintiff's favor would imply the invalidity of his conviction or sentence." *Harrison v. Morton*, 490 Fed. Appx. 988, 991 (10th Cir. 2012). The rule also applies to disciplinary convictions. *Id.* (citing *Edwards v. Balisok*, 520 U.S. 641, 643 (1997).

² The District Court noted that Plaintiff's Complaint was unclear as to whether the challenged change in custody level was part of the disciplinary punishment or whether he was challenging his custody level as calculated when he entered NFCF. (ECF No. 21:6). He is challenging both.

Ms. Hagerman, chief of security; R. Ferguson, correctional counselor; and c/o Hansen, correctional officer. (Amended Complaint, 1-3). He reasserts all claims in his original Complaint, even those previously dismissed by the District Court with prejudice.

In Count II of his Amended Complaint, Plaintiff again asserts that Defendants fabricated a disciplinary action (RVR 115) against him for "refusing to house." Plaintiff has failed to demonstrate that his disciplinary conviction has been overturned. Nevertheless, Plaintiff steadfastly contends that he is challenging the conditions of his confinement:

> [N]o matter a decision by way of habeas corpus is/was available to plaintiff to obtain relief, he is/was challenging his conditions of confinement.

(ECF No. 28:4). Most of the reasserted conditions of confinement claims have already been dismissed by the District Court. The rest are barred by *Heck/Edwards*. Moreover, any challenge to his disciplinary conviction and resulting punishments, including his claim that he did not "refuse to house," are in the nature of habeas claims. These claims would have to have been exhausted through the prison disciplinary process. Then, if no relief were granted, Plaintiff would have to have challenged his disciplinary conviction through a habeas action brought pursuant to 28 U.S.C. § 2241 and been granted relief before he could challenge the conditions of his confinement. But even assuming that Plaintiff's claims were not barred by *Heck* and *Edwards*, his description of the conditions of his confinement in the segregation unit do not implicate violations of the Eighth Amendment:

> [P]laintiff suffered a loss of liberty, his property was rummage through by defendant Ferguson, he lost his liberty of access to the law library, his chance to move freely about his pod, contact with family via the telephone, some things (property) was discarded as garbage [such as] open hygiene products.

(ECF No. 28:7). None of these conditions of confinement can be construed as Eighth Amendment violations. "In the penological context, not every deprivation of liberty at the hands of prison officials has constitutional dimension. This is so because incarcerated persons retain only a 'narrow range of protected liberty interests.'" *Rezaq v. Nalley,* 677 F.3d 1001, 1011 (10th Cir. 2012) (quoting *Abbott v. McCotter,* 13 F.3d 1439, 1442 (10th Cir. 1994)). For example, a liberty interest may arise when an inmate faces conditions of confinement that impose an "'atypical and significant hardship ... in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Wilkinson v. Austin,* 545 U.S. 209, 223 (2005)). When conditions do not rise to that level, the court will not review the procedural steps taken by prison officials in determining the appropriate placement of inmates. *See id.* at 1016 ("Because no liberty interest is implicated, we do not reach the question of whether the inmates received adequate process to justify their transfers to ADX."). None of the conditions of confinement described by Plaintiff in this case constitute atypical conditions or impose significant hardship in relation to the ordinary incidents of prison life. Thus, Defendants are entitled to summary judgment on any remaining conditions of confinement claims.

Challenges based on the Due Process Clause of the Fourteenth Amendment, including Plaintiff's contention that he was deprived of due process when prison officials housed him in the segregation unit for one day without a hearing, are issues in the nature of habeas and be would have to be properly challenged through a petition for habeas relief under 28 U.S.C. § 2241, after exhausting the prison grievance procedure. Plaintiff's challenge to his custody level assignment upon his arrival at NFCF and the change in custody level after his disciplinary conviction both fail to state a cognizable claim.

The Affidavit of Troy Shook, Classification Supervisor at NFCF, is instructive on these issues. Shook, who is not named as a defendant in this action, states that it was he who determined that Plaintiff should be classified at the "medium" security level upon his arrival at NFCF. (Special Report, ECF No. 14-2) (Shook Affidavit). At his previous facility, Plaintiff's security classification had been assessed as "low." But Shook stated that Plaintiff's low security classification was automatically overridden by policy to "medium" based on the length of time Plaintiff had left to serve.[3] (Shook Affidavit at 3). California law and regulations specifically state that "length of sentence" is one factor that a classification officer should consider when determining the appropriate security classification. (*See* ECF No. 32-2, "Inmate Housing" regulation of the California

---

[3] Shook stated that Plaintiff's estimated parole release date is April 29, 2039.

Department of Corrections and Rehabilitation).[4] Therefore, the increase in the custody level assigned upon Plaintiff's transfer to NFCF did not implicate any due process rights.[5]

Plaintiff alleges that four points were added to his security level after his misconduct conviction. The District Court opined that the four-point increase might affect Plaintiff's good time credits. But the reclassification had no effect on Plaintiff's ability to earn good time credits because his security classification remained at "medium." The four points were actually added to Plaintiff's original "low" classification and resulted in his being again classified as "medium." (Affidavit of Shook at 3). Therefore, Plaintiff's reclassification could not have affected his ability to earn good time credits and no liberty interest was impinged.

As for his assignment to the segregation unit from August 30, 2012, to September 6, 2012, Shook states that the placement was done to accommodate Plaintiff who told prison officials he had "safety concerns." (Shook Affidavit at 4). His subsequent transfer to a facility with a "Sensitive Needs Yard" was also precipitated by his own fear for his safety. (Shook Affidavit at 4).

---

[4] This document is attached to Plaintiff's Response to Defendants' second Motion to Dismiss.

[5] It should be noted that one of Plaintiff's initial complaints was that he wished to be in the same cell as his son. In fact, Plaintiff still contends that the sequence of events at issue in this case were precipitated by defendants' decision to move Plaintiff to a cell away from his son. Plaintiff's son's security classification upon arriving at NFCF was "high." (Shook's Affidavit at 3). Because prison regulations prohibit housing a prisoner with a "low" security classification with a prisoner classified as "high," Plaintiff would never have been able to have been celled with his son, had Shook left Plaintiff's security classification as "low." (Shook Affidavit at 3).

As for his transfer, Plaintiff has no constitutional right to be placed in a particular correctional institution. California law does not change this result. *See Jones v. Moran*, 900 F. Supp. 1267, 1275-76 (N.D. Cal. 1995) ("Because an inmate has no liberty interest in transfer, the delay in Plaintiff's transfer to CMF was not a constitutional violation."); *United States v. Brown*, 59 F.3d 102, 105 (9th Cir. 1995) ("As to the transfer, '[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.'" (quoting *Meachum v. Fano*, 427 U.S. 215, 225 (1976)).

In sum, Defendants' Motion to Dismiss should be converted to a Motion for Summary Judgment, and as so construed, the Motion should be **GRANTED**. To the extent that Plaintiff requests an evidentiary hearing, that request should be **DENIED**.

## RECOMMENDATION

In light of the foregoing, it is recommended that the Defendants' Motion to Dismiss Plaintiff's Amended Complaint, **(ECF No. 29)**, be construed as a Motion for Summary Judgment, and that, so construed, the Motion be **GRANTED.**

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by **January 9, 2015**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** on December 23, 2014.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE